PROMETHEUS GROUP ENTERPRISES, )
LLC, )
      Plaintiff, )
)
v. )    **O R D E R**
)
VIZIYA CORP., GLOBAL PTM, INC., )
and TERRY OWENS, )
      Defendants. )

This cause comes before the Court on defendants Viziya and Global PTM's motion to dismiss pursuant to Rules 12(b)(2) and (6) of the Federal Rules of Civil Procedure and defendant Owens' motion to dismiss pursuant to Rule 12(b)(6) of the Federal Rules of Civil Procedure. Plaintiff has responded to the motions, defendants have replied, and the matters are ripe for ruling. For the reasons discussed below, defendants' motions to dismiss are granted.

## BACKGROUND

Prometheus is a technology company located in Raleigh, North Carolina that is engaged worldwide in the business of developing, manufacturing, and marketing enterprise application software. Specifically, Prometheus develops software, also called bolt-on software, to improve the usability and user adoption of SAP's plant maintenance module and enterprise asset management platform. Prometheus hired defendant Owens in September 2012 and, prior to his resignation in December 2013, Owens served as the company's Director of Sales for North America and Europe. Owens entered into an agreement with Prometheus which requires him to refrain from disclosing and using Prometheus' proprietary information except in connection with his duties while working for Prometheus. Owens also agreed to refrain from competing with

Prometheus by working for a restricted business within a restricted territory for a period of one year following his departure from Prometheus, and to refrain from directly or indirectly soliciting customers to whom plaintiff sold any product or for whom plaintiff performed any services during the two year period prior to Owens' departure. [DE 5-1]. The agreement also prohibits Owens from soliciting Prometheus employees or independent contractors for a period of one year following his departure. *Id.* (non-disclosure, non-compete, and non-solicitation agreements, referred to collectively hereinafter as restrictive covenant or non-compete agreement). A restricted business is defined by the agreement to include, among other things, any business related to providing services related to manufacturing, selling, or distributing software applications related to SAP enterprise software installments. *Id.* The restricted territory is defined by the agreement to include the entire world; North America; the United States of America; each state in which Prometheus does business; the States of Maryland, Virginia, North Carolina, South Carolina, and Georgia; the State of North Carolina; and Wake County. *Id.*

Prometheus alleges in its complaint that between November 2013 and January 2014, Owens and several other employees resigned en-masse in order to work for defendant Viziya Corp. or its subsidiaries. Prometheus alleges that the Viziya companies are direct competitors that also provide enterprise asset management software to companies. Prometheus further alleges that, in addition to violating his non-compete and non-solicitation agreements, Owens has misappropriated highly sensitive proprietary information, including reports summarizing global sales activity and 2013 license sales as well as a pipeline report detailing all pertinent data for every business opportunity that Prometheus is pursuing, by forwarding them to his personal email account prior to his departure. Prometheus contends that Owens has or will inevitably disclose or use on behalf of Viziya Prometheus' confidential and proprietary information.

Prometheus filed its complaint against Owens, Viziya, and Global PTM, a wholly-owned subsidiary of Viziya, on January 24, 2014. Along with its complaint, Prometheus filed a motion for temporary restraining order and preliminary injunction pursuant to Rule 65 of the Federal Rules of Civil Procedure. The Court has denied Prometheus' request for temporary restraining order and motion for preliminary injunction. [DE 8 & 37]. All defendants have pending motions to dismiss the complaint in its entirety. Viziya and Global PTM, the corporate defendants, contend first that this Court lacks personal jurisdiction over them. The corporate defendants and Owens both contend that Prometheus' complaint fails to state a claim upon which relief can be granted. Fed R. Civ. P. 12(b)(2); (6).

## DISCUSSION

I.  THE COURT LACKS PERSONAL JURISDICTION OVER THE CORPORATE DEFENDANTS

Where a defendant moves to dismiss for lack of personal jurisdiction, the plaintiff has the burden of showing that jurisdiction exists. *See In re Celotex Corp.*, 124 F.3d 619, 628 (4th Cir. 1997); *Young v. F.D.I.C.*, 103 F.3d 1180, 1191 (4th Cir. 1997). When a court considers a challenge to personal jurisdiction without an evidentiary hearing and on the papers alone, it must construe the relevant pleadings in the light most favorable to the plaintiff. *Combs v. Bakker*, 886 F.2d 673, 676 (4th Cir. 1989).

For a district court to properly assert personal jurisdiction over a nonresident defendant, two conditions must be met: (1) the exercise of jurisdiction must be authorized under the state's long-arm statute; and (2) the exercise of jurisdiction must comport with the due process requirements of the Fourteenth Amendment. *See Christian Sci. Bd. of Dirs. of the First Church of Christ v. Nolan*, 259 F.3d 209, 215 (4th Cir. 2001). Because North Carolina's long-arm statute is construed to give "the North Carolina courts the full jurisdictional powers permissible

under federal due process," *Vishay Intertechnology, Inc. v. Delta Intern. Corp.*, 696 F.2d 1062, 1065 (4th Cir. 1982), these inquiries collapse into one. *See ESAB Grp., Inc. v. Centricut, Inc.*, 126 F.3d 617, 623 (4th Cir. 1997).

This Court may exercise personal jurisdiction consistent with due process if a defendant has "minimum contacts" with the forum such that to require them to defend their interests in North Carolina "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). If the foreign party maintains "continuous and systematic" contacts with a state, the state has general personal jurisdiction over the party, and the nonresident may be sued in that state on any claim. *See Perkins v. Benguet Consol. Mining Co.*, 342 U.S. 437, 446 (1952). When there are no such contacts, a court may assert personal jurisdiction if the litigation arises out of the defendant's specific contacts with the forum, which is known as specific jurisdiction. *See Helicopteros Nacionales de Colombia v. Hall*, 466 U.S. 408, 414 n. 8 (1984); *see also Goodyear Dunlop Tires Operations, S.A. v. Brown*, 131 S. Ct. 2846, 2851 (2011) ("Specific jurisdiction . . . depends on an affiliation between the forum and the underlying controversy, principally, activity or an occurrence that takes places in the forum State and is therefore subject to the State's regulation.") (internal alterations, quotation, and citation omitted) .

Prometheus does not contend nor does the record support that the corporate defendants are subject to general jurisdiction due to continuous and systematic contacts, and thus the Court limits its inquiry to whether it may exercise specific personal jurisdiction over the corporate defendants.

To determine whether specific jurisdiction exists, a defendant must have purposefully availed itself of the privilege of conducting business within the forum state, giving it "fair

warning that a particular activity may subject [it] to the jurisdiction of a foreign sovereign." *CFA Inst. v. Inst. of Chartered Fin. Analysts of India*, 551 F.3d 285, 293 (4th Cir. 2009). A court thus considers (1) the extent to which the defendant has purposefully availed itself of the privilege of conducting business in the state, (2) whether the plaintiff's claims arise out of those activities directed toward the state, and (3) whether the exercise of specific jurisdiction would be constitutionally reasonable to determine whether specific jurisdiction has been established. *ALS Scan, Inc. v. Digital Serv. Consultants, Inc.*, 293 F.3d 707, 712 (4th Cir. 2002). "If, and only if, [a court] find[s] that the plaintiff has satisfied this first prong of the test for specific jurisdiction need [it] move on to a consideration of prongs two and three." *Consulting Engineers Corp. v. Geometric Ltd.*, 561 F.3d 273, 278 (4th Cir. 2009). Specific factors a court may consider when determining whether a business entity has purposefully availed itself of the privilege of conducting business within the state include but are not limited to whether the entity maintains offices or agents in the state, whether it owns property in the state, whether it reached into the forum state to solicit or initiate business, whether it engaged in significant or long-term business activities in the forum state, whether the entity made in-person contact with a resident of the forum state regarding the business relationship, and whether the parties agreed that the law of the forum state would govern interpretation of the contract. *Id.* (citations omitted).

Viziya is a Canadian entity with its headquarters in Ontario Canada. Vujicic Dec. ¶ 2. Of its twenty eight employees and three contractors, three employees are located in the United States and no employees or contractors are located in North Carolina. *Id.* ¶ 5. Viziya does not conduct any SAP-related business in North Carolina; it has one customer which has two sites in North Carolina, and Viziya's contract with this customer is governed by the State of New York. *Id.* ¶ 7. Global PTM is a Texas corporation with its headquarters in Greenville, South Carolina.

*Id.* ¶ 3. Global PTM has two software consultants who are currently working on a project in Charlotte, North Carolina. Neerhof Dec. ¶ 4. Defendant Owens works for Global PTM at its headquarters in South Carolina. Neither Viziya nor Global PTM owns property, holds assets, directs any particular advertising at, has ever sued or, prior to this suit, been sued in North Carolina. Vujicic Dec. ¶ 6; Neerhof Dec. ¶ 5.

Clearly, none of the above mentioned specific factors would support a finding that either corporate defendant has purposefully availed itself of the privilege of doing business in North Carolina or that, where it has, the claims in the complaint arise out of those contacts with North Carolina. Prometheus contends that specific jurisdiction may still be found because the corporate defendants have engaged in intentional tortious conduct directed toward North Carolina. "When a defendant commits intentional, harmful acts against a plaintiff, and when those acts are expressly aimed at the plaintiff's state of residence, that state can exercise personal jurisdiction over the defendant." *Szulik v. TAG Virgin Islands, Inc.*, 858 F. Supp. 2d 532, 543 (E.D.N.C. 2012) (citing *Calder v. Jones*, 465 U.S. 783, 788–90 (1984)). However, "the plaintiff cannot be the only link between the defendant and the forum. Rather, it is the defendant's conduct that must form the necessary connection with the forum State that is the basis for its jurisdiction over him." *Walden v. Fiore*, 134 S. Ct. 1115, 1122 (2014).

Here, Prometheus has not alleged any facts in its complaint which if taken as true would support that the corporate defendants engaged in intentional, harmful acts expressly aimed at North Carolina. While Prometheus has raised a claim for tortious interference with contract, the factual allegations supporting such claim show that employees of Prometheus, none of whom were located in North Carolina and indeed the majority of whom were contract employees located outside the United States, initiated email correspondence with the corporate defendants,

6
Case 5:14-cv-00032-BO Document 47 Filed 08/05/14 Page 6 of 15

specifically Viziya. Defendant Owens also initiated email correspondence with Viziya, and received email correspondence in return, but was not located in North Carolina at the time he engaged in the correspondence. The sole former Prometheus employee who is identified as residing in North Carolina at the time he initiated correspondence with Viziya, Gary King, is not a defendant in this lawsuit and is currently employed at neither Viziya nor Global PTM, but at an unaffiliated company. Thus, there is no basis upon which to find that the corporate defendants expressly aimed tortious conduct at North Carolina.[1]

Prometheus further seeks to rely on the exercise of long-arm jurisdiction pursuant to a conspiracy theory, which the Fourth Circuit has approved under certain circumstances. *See McLaughlin v. McPhail*, 707 F.2d 800, 807 (4th Cir. 1983) (per curiam). "Mere allegations of a conspiracy will not suffice," however, and the plaintiff must make a threshold showing that there was a conspiracy in which the defendant participated in order to support the exercise of personal jurisdiction. *Szulik*, 858 F. Supp.2d at 543 (citing *Lovalar v. de Santibanes*, 430 F.3d 221, 229 (4th Cir. 2005). A full reading of the complaint reveals that Prometheus has made only unsupported allegations that Viziya and Global PTM engaged in a conspiracy to "raid" a group of Prometheus employees. As it has not made a threshold showing that the corporate defendants

---

[1] Prometheus relies on a First Circuit case in which the court found that allegations of tortious interference with contract in a dispute between a former employer, employee, and the new employer regarding a non-competition agreement was sufficient to confer personal jurisdiction. *Astro-Med, Inc. v. Nihon Kohden Am., Inc.*, 591 F.3d 1 (1st Cir. 2009). That case is distinguishable, however, as the defendant in that matter "persisted in negotiations in the face of legal advice from its own counsel that to do so would pose a risk" in light of the employment agreement which required application of Rhode Island, the forum state, law. *Id.* at *10. Thus, the court of appeals held that it was certainly foreseeable to defendant that it might be held accountable in a Rhode Island forum. *Id.* Prometheus has made no such allegation in its complaint that would suggest that Viziya or Global PTM would foresee that they might be held accountable in a North Carolina forum for any actions taken regarding defendant Owens or other Prometheus employees.

engaged in a conspiracy, Prometheus cannot rely on such a theory to support *in personam* jurisdiction over them.

Because, even construing the facts alleged in the complaint in the light most favorable to plaintiff, Prometheus has not satisfied its burden to show that exercise of specific jurisdiction over the corporate defendants in this matter is proper, Viziya and Global PTM's Rule 12(b)(2) motion to dismiss is GRANTED.

II. THE COMPLAINT FAILS TO STATE A CLAIM UPON WHICH RELIEF CAN BE GRANTED AGAINST OWENS

A Rule 12(b)(6) motion tests the legal sufficiency of the complaint. *Papasan v. Allain*, 478 U.S. 265, 283 (1986). When acting on a motion to dismiss under Rule 12(b)(6), "the court should accept as true all well-pleaded allegations and should view the complaint in a light most favorable to the plaintiff." *Mylan Labs., Inc. v. Matkari*, 7 F.3d 1130, 1134 (4th Cir.1993). A complaint must allege enough facts to state a claim for relief that is facially plausible. *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Facial plausibility means that the facts pled "allow[] the court to draw the reasonable inference that the defendant is liable for the misconduct alleged"; mere recitals of the elements of a cause of action supported by conclusory statements do not suffice. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). If the factual allegations do not nudge the plaintiff's claims "across the line from conceivable to plausible," the "complaint must be dismissed." *Twombly*, 550 U.S. at 570.

Prometheus has alleged claims for breach of contract, misappropriation of trade secrets, and unfair competition against Owens. The Court considers each in turn.

A.  Breach of Contract

In order to be valid and enforceable under North Carolina law, restrictive covenants between employers and employees must be in writing, based upon valuable consideration, reasonably necessary for the protection of legitimate business interests, reasonable as to time and territory, and not otherwise against public policy. *A.E.P. Industries, Inc. v. McClure,* 308 N.C. 393, 402-3 (1983). Covenants not to compete must withstand strict scrutiny, and any ambiguities must be drawn against the drafter. *Washburn v. Yadkin Valley Bank & Trust Co.,* 190 N.C.App. 315, 323 (2008) (citations omitted). The party who seeks to enforce a covenant not to compete has the burden to show that the covenant is reasonable, and non-competition covenants are not looked upon favorably in modern law. *Hartman v. W.H. Odell & Assocs., Inc.,* 117 N.C.App. 307, 311 (1994).

Owens contends that plaintiff's breach of contract claim is facially implausible because the restrictive covenant is unenforceable as a matter of law and that the claim fails due to the insufficiency of the facts pled. The Court agrees.

As discussed in its order on plaintiff's motion for preliminary injunction, the scope of the non-compete provision at issue is overly broad. The non-compete clause restricts Owens from, *inter alia*, directly or indirectly engaging in, whether as an employee, consultant, proprietor, partner, or otherwise, any person or business that engages in providing services related to manufacturing, selling, or distributing software applications related to SAP enterprise software installations. A restrictive covenant which attempts to prevent an employee from having even an indirect interest in a similar business has been specifically rejected by North Carolina courts as overbroad, *see Horner Int'l Co. v. McKoy,* 754 S.E.2d 852, 857 (N.C. Ct. App. 2014), as have non-compete agreements which prevent employees from all manners of employment by

"similar" businesses. *See e.g. Hartman*, 117 N.C.App. at 317; *see also Copypro, Inc. v. Musgrove*, COA13-297, 2014 WL 423857 (N.C. Ct. App. Feb. 4, 2014); *VisionAIR, Inc. v. James*, 167 N.C. App. 504, 508 (2004). Where, as here, a non-compete provision attempts not only to prevent a former employee from competing for business, but also seeks to prevent a former employee from having any association with any business which provides similar services, such covenant is over-broad and unenforceable under North Carolina law. *Okuma Am. Corp. v. Bowers*, 181 N.C. App. 85, 91 (2007).

Nor has Prometheus pled sufficient facts to demonstrate that the non-compete clause is sufficiently tailored in its geographic restriction. "A restriction as to territory is reasonable only to the extent that it protects the legitimate interest of the employer in maintaining its customers." *Manpower of Guilford Cnty, Inc. v. Hedgecock*, 42 N.C.App. 515, 523 (1979). "To prove that a geographic restriction in a non-compete provision is reasonable, an employer must first show where its customers are located and that the geographic scope of the covenant is necessary to maintain those customer relationships." *Farr Assocs., Inc. v. Baskin*, 138 N.C.App. 276, 281 (2000) (citation omitted). Additionally, geographic "territory should *only* be limited to areas in which the employee made contacts during the period of his employment." *Manpower*, 42 N.C.App. at 522 (emphasis added).

While a restrictive covenant with a global territory may be enforceable under some circumstances, the allegations in the instant complaint fail to specifically allege where Prometheus' customers are located or any specific areas in which Owens himself made contacts with customers while he was employed by Prometheus. Alleging that Owens was director of sales for North America and Europe is simply insufficient, without additional factual support, to demonstrate that a world-wide geographic restriction is necessary in order for Prometheus to

maintain its relationships with its customers. As noted in its prior order, Prometheus' attempt to draft a geographic restriction which could be as broad as world-wide or as narrow as Wake County, dependent upon a court's interpretation and its application of the blue pencil rule, is an ineffective and insufficient means by which to demonstrate the reasonableness of such a provision.

Prometheus has further failed to allege sufficient facts to support its claim for breach of the non-disclosure and non-solicitation provisions of Owens' restrictive covenant. The complaint alleges that due to his position Owens had access to a large amount of proprietary information, including information about marketing and sales, customer lists, potential customer lists, and new research and design ideas. Alleging that an employee had access to confidential information is insufficient to support a claim for breach of a non-disclosure agreement absent evidence or allegations of actual breach. *VisionAIR*, 167 N.C.App. at 510 (citing *RGK, Inc. v. U.S. Fid. & Guar. Co.*, 292 N.C. 668, 675 (1977)). The complaint further alleges that Owens sent to his personal email prior to his departure several documents which Prometheus claims contained highly sensitive and confidential information, but it does not allege that any documents have actually been disclosed to Owens' new employer Global PTM. In regard to the non-solicitation provision, Prometheus alleges that other employees left Prometheus and became employed by Viziya companies, but has not alleged facts that would support that Owens himself actually induced or solicited any of those employees to leave Prometheus' employ. *See Inland American Winston Hotels, Inc. v. Crockett*, 212 N.C. App. 349, 353-55 (2011) (defining solicit and induce in employment context to require active persuasion, request, or petition).

For the foregoing reasons, the Court finds portions of the restrictive covenant at issue in this matter to be unreasonable and therefore unenforceable as a matter of law. Because "equity

will neither enforce nor reform an overreaching and unreasonable agreement," the entire restrictive covenant must fail. *Beasley v. Banks*, 90 N.C. App. 458, 460 (1988) (citation omitted). Moreover, Prometheus has failed to allege sufficient facts to support its claim for breach of contract, and dismissal of the breach of contract claim pursuant to Rule 12(b)(6) is therefore appropriate.

B.  Misappropriation of Trade Secrets

Prometheus alleges that Owens has without consent taken, disclosed, or used Prometheus' trade secrets. A trade secret under North Carolina law is defined as "business or technical information that '[d]erives independent actual or potential commercial value from not being generally known or readily ascertainable through independent development ... and [is] the subject of efforts that are reasonable under the circumstances to maintain its secrecy.'" *Sunbelt Rentals, Inc. v. Head & Engquist Equip., L.L.C.*, 174 N.C. App. 49, 53 (2005) (quoting N.C. Gen.Stat. §§ 66-152(3)(a)-(b)). In order to adequately plead misappropriation of trade secrets, a plaintiff "must identify a trade secret with sufficient particularity so as to enable a defendant to delineate that which he is accused of misappropriating and a court to determine whether misappropriation has or is threatened to occur." *Analog Devices, Inc. v. Michalski*, 157 N.C.App. 462, 468 (2003). General allegations and sweeping conclusory statements are insufficient, *VisionAIR*, 167 N.C.App. at 511, and North Carolina law does not protect on behalf of the employer customer information that is held in the memory of an employee who has departed. *Asheboro Paper & Packaging, Inc. v. Dickinson*, 599 F. Supp.2d 664, 677 (M.D.N.C. 2009).

The complaint alleges that Owens had access to highly sensitive confidential information, including but not limited to information regarding research and development, new products,

marketing and selling, pricing information, business strategies, and current and potential customers. The complaint further alleges that during his employment Owens was intimately involved in, *inter alia*, overall go-to-market strategies, understanding and managing customer relationships, proposals for new prospects, and developmental pipeline opportunities. Such general allegations regarding an employee's knowledge of what may, or may not, constitute a trade secret under North Carolina law are simply insufficient to state a claim for misappropriation of trade secrets.

In response to the instant motion, Prometheus relies on its allegations regarding Owens' "theft" of highly sensitive and confidential information, specifically a worldwide pipeline report representing the current status of the company's efforts over years to develop its business. Though the complaint identifies this report with specificity, it does not allege that the information contained therein could not be derived from independent development or the extent to which the information contained therein is already known outside the business. *See Combs & Assoc., Inc. v. Kennedy*, 147 N.C.App. 362, 370 (2001) (listing factors courts consider to determine whether information constitutes a trade secret). All confidential and proprietary information generated by a business does not qualify for protection under North Carolina's trade secrets laws, and merely alleging that such information was taken by a former employee does not state a claim that the information, if it were to qualify for trade secret protection, has in fact been misappropriated. Indeed, as Prometheus has not alleged in what capacity Owens is employed by Global PTM, its claim that Owens has or will inevitably disclose sales information is particularly conclusory. *Compare, e.g. Barr-Mullin, Inc. v. Browning*, 108 N.C.App. 590, 596 (1993) (prima facie case of misappropriation of trade secrets established where defendant former employee had helped develop proprietary software during his employment with plaintiff which could not easily

be reverse engineered and identical software began to be produced by new employer of defendant following defendant's departure from plaintiff's employ).

C.  Unfair Competition Claim

Finally, Prometheus has not stated a claim against Owens for violations of North Carolina's Unfair and Deceptive Trade Practices Act. N.C. Gen. Stat. § 75-1. Courts in North Carolina have "consistently held that the employer/employee relationship does not fall within the intended scope and purpose of the Unfair and Deceptive Trade Practices Act (UDTP)." *Kinesis Adver., Inc. v. Hill*, 187 N.C. App. 1, 21 (2007). Prometheus has alleged that Owens had an ongoing duty to comply with the terms of his employment agreement and failed to do so, but has not sufficiently alleged, as is necessary to support such a claim, any egregious conduct outside the scope of his duties or otherwise unfair or deceptive actions engaged in by Owens. *Dalton v. Camp*, 353 N.C. 647, 656 (2001). While Prometheus has alleged that any misappropriation of trade secrets by Owens would support its claim for unfair and deceptive trade practices, *see Drouillard v. Keister Williams Newspaper Svs.*, 108 NC App. 169, 172 (1992), as discussed above, Prometheus has failed to allege its misappropriation of trade secrets claims with sufficient particularity in order to survive the motion to dismiss. In essence, Prometheus' unfair competition claim suffers from the same deficiencies as its breach of contract and misappropriation claims: while Prometheus has made sweeping and conclusory allegations about what information Owens possessed and the mere fact that he has been employed in some fashion by a purported competitor, it has failed to allege with sufficient specificity facts that would allow this Court, relying on its common sense, to draw the reasonable inference that Owens is liable for the misconduct alleged.

## CONCLUSION

Accordingly, for the reasons discussed above, defendants Viziya and Global PTM's motion to dismiss for lack of personal jurisdiction [DE 26] is GRANTED and defendant Owens' motion to dismiss for failure to state a claim [DE 39] is GRANTED. Prometheus' complaint is DISMISSED in its entirety and the clerk is DIRECTED to enter judgment and to close the file.

SO ORDERED, this _4_ day of _Aug._, 2014.

_____
TERRENCE W. BOYLE
UNITED STATES DISTRICT JUDGE